JAMES S. FLOYD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. H. SMAW AND CLAUDIA SMAW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101354, 112427. Promulgated September 27, 1943.

*Sidney J. Hayles, C. P. A.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: These proceedings, consolidated for purpose of opinion, involve income tax as follows:

| Docket No. | Year involved | Amount |
|---|---|---|
| 101354 | 1935 | $14, 623. 92 |
| 112427 | 1935 | 1, 375. 65 |
|  | 1936 | 2, 276. 20 |

The question involved in each case is whether a transaction in corporate stock causes the computation of tax upon the entire amount of gain, or only a percentage thereof, under section 115 (c) of the Revenue Act of 1934,[1] and of the 1936 Act to the same effect, or whether there sall be taxed only a percentage of gain under section 117 (a) of the same revenue acts.[2] Secondarily, and in the same connection, question arises whether section 147 of the Revenue Act of

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTION IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111. but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

1942,[8] amending section 115 (c) of the Internal Revenue Code, is retroactively effective in the taxable years. If so, section 117 (a) applies to the transactions herein considered.

In cause No. 101354, most of the facts, and in cause No. 112427, all the facts, were stipulated. By reference we find as facts those set forth in the stipulations. So far as material to examination of the question, the stipulated facts, and, in the Floyd case, those stipulated. with other facts found from evidence introduced, may be stated, separately for each case, as follows:

In the Floyd case, the petitioner's income tax return for 1935 was filed with the collector for the district of Georgia.

The petitioner in 1923 acquired 100 shares of stock in Coca-Cola International Corporation (hereinafter sometimes called International), at a cost leaving in 1935 a basis of $2,906.08. In 1935 he was indebted in the amount of $100,000 due on April 2, 1935, to a bank which held as collateral to the loan the certificate representing the stock. The bank requested reduction of the loan and the petitioner agreed to sell the stock. He made through a broker two sales of 100 shares each of Coca-Cola common stock. No Coca-Cola common stock was issued in the name of petitioner. The broker reported to petitioner the sale of 200 shares of Coca-Cola. The broker notified petitioner on April 5, 1935, that he could get the money, and petitioner went to the bank, issued a trust receipt for the stock certificate, delivered it to the broker, and received a check for $39,474.37. The sale of the Coca-Cola preceded the delivery of the Coca-Cola International. Petitioner deposited the check in the bank and gave the bank a check for $40.000 upon his indebtedness.

Under date of April 5, 1935, the records of the broker, on the account of the petitioner, show two sales of 100 shares each of "Coca-Cola" for a total of $39,493.70, expense of 33 cents for "mailing exp.,"

[8] SEC. 147. DISTRIBUTIONS IN LIQUIDATION.

Section 115 (c) is amended to read as follows:

"(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. If any distribution in partial liquidation or in complete liquidation (including any one of a series of distributions made by the corporation in complete cancellation or redemption of all its stock) is made by a foreign corporation which with respect to any taxable year beginning on or before. and ending after. August 26. 1937, was a foreign personal holding company. and with respect to which a United States group (as defined in section 331 (a) (2)) existed after August 26, 1937, and before January 1, 1938, then, despite the foregoing provisions of this subsection, the gain recognized resulting from such distribution shall be considered as a gain from the sale or exchange of a capital asset held for not more than 6 months."

and issuance of a check for $39,474.37, leaving a balance of $19. The broker's records on April 5, 1935, also show 100 shares "Coca-Cola" received. Under date of April 9, 1935, a charge of $19 appears for "Exc. chg. on 100 Coca-Cola Intl." Petitioner's income tax returns were made up by a firm of certified public accountants from his records. He received monthly statements from the broker covering his transactions with them. Petitioner told the bank that he was selling 100 shares to apply on the debt, and it was not his idea to sell Coca-Cola stock, but to sell Coca-Cola International common. The broker did not acquire the International for its own account, but it was handled for the petitioner. On April 5, 1935, the broker transferred the certificate which was in the name of the petitioner to its New York correspondent, with instructions to exchange the certificate with the authorized representatives of Coca-Cola International Corporation. This the correspondent did on April 9, 1935, and on April 12, 1935, received in exchange 200 shares of Coca-Cola common stock registered in the name of the correspondent. The exchange fee of $19 and the mailing cost of 33 cents were charged on the books of the broker to the petitioner.

The Coca-Cola International Corporation in 1929 had adopted a resolution whereby its stockholders might at any time exchange shares, plus 19 cents per share, for twice·the number of shares of Coca-Cola common stock. The resolution further provided that all such shares received in exchange should be canceled and retired, and the provisions of the resolution continued in effect throughout 1935 and still continue.

On January 5, 1935, International filed a certificate of amendment of its certificate of incorporation, providing, among other things, that the corporation might acquire shares of its stock and that upon such acquisition such shares should not be reissued, but should be permanently retired. No sales of International were made on the New York Stock Exchange from November 1934 throughout the year 1935, although Coca-Cola International common stock was listed on that Exchange during that time.

In his income tax return for 1935 the petitioner reported capital gain on the sale of 200 shares of "Coca-Cola" acquired in 1923, which when testifying in this case he explained as Coca-Cola common stock. The return also lists as expenses deducted "Mailing expense, re stocks . . . $19.81." Listing the stock on his return as being held more than ten years, the petitioner reported a profit of $10,140.82, and now contends that such is the correct figure on the theory that under section 117 (a) of the Revenue Act of 1934, only 30 percent of capital gain was taxable. The Commissioner added $26,465.60 to petitioner's gross income on the theory that the total profit was $36,606.42, after deducting a cost of $2,906.08.

The deficiency notice recites as reasons for the determination that the exchange of 100 shares of Coca-Cola International for 200 shares of Coca-Cola common is held to be a partial liquidation of Coca-Cola International Corporation and that 100 percent of the profit realized is taken into account in computing net income, in accordance with section 115 (c) of the Revenue Act of 1934.

In the Smaw case, joint income tax returns were filed by the petitioners for the taxable years with the collector of internal revenue for the district of Georgia.

As a part of the stipulation of facts, the parties in effect adopt the pertinent facts found in the case of *Gus T. Dodd*, 46 B. T. A. 7; affd., 131 Fed. (2d) 382, in which it was held that a transaction with reference to the stock of Coca-Cola International Corporation was a distribution in partial liquidation. The parties further stipulate and we find that on December 16, 1935, and January 14, 1936, the petitioners were the owners of common stock of Coca-Cola International Corporation acquired in 1921, and that such stock was exchanged on said dates for common stock of the Coca-Cola Co. No argument occurs as to remaining bases of the stock so exchanged or the value of the stock received.

In other words, in the Smaw case there is no question as to whether there was exchange in partial liquidation and our only problem is, as above stated, whether because of retroactivity of section 147 of the Revenue Act of 1942, the provisions of section 117 (a) of the Revenue Acts of 1934 and 1936 may be applied to the transaction herein involved, notwithstanding the provisions of section 115 (c) of the same revenue acts, excluding the effect of section 117 (a) in case of capital gain from distributions in partial liquidation. Since consideration of the Floyd case covers and requires examination of the same question presented in the Smaw case, we consider it first.

The petitioner, Floyd, argues first, that he sold only International Stock and had no Coca-Cola common to sell; therefore, that he made no exchange of International for Coca-Cola common which could be classed as an exchange in partial liquidation under section 115 (c) of the Revenue Act of 1934, with the result that his gain was capital gain, to be reported only to the extent of 30 percent under the schedule prescribed under section 117 (a) of the Revenue Act of 1934.

We first consider whether the petitioner exchanged his International common for Coca-Cola common. If so, the transaction was a part of an exchange in partial liquidation and, under the Revenue Act of 1934, the entire amount of profit was taxable. Upon consideration of the entire record, we are of the opinion that he did make such exchange. Although the petitioner argues that he had no Coca-Cola common stock and did not intend to sell any, nevertheless the stip-

ulation of facts recites that: "On April 3, 1935, petitioner made, through Courts & Co., two sales of 100 shares each of Coca-Cola common * * * "

Though the records of the broker (Courts & Co.) show the receipt of the 100 shares of stock and the sale of the 200 shares of Coca-Cola on April 5, 1935, it is apparent that the 200 shares of Coca-Cola common were sold prior to the receipt of the Coca-Cola International and therefore the stipulation seems not to disagree with the broker's records and to indicate some sort of arrangement by the petitioner through the broker of sale of 200 shares of Coca-Cola common made on April 3, 1935 and carried out on April 5. 1935. It thus appears that the broker made for the petitioner a sale of Coca-Cola common stock, that in order to obtain the Coca-Cola common, the International stock was exchanged therefor. If we were to assume that the petitioner did not intend to order the sale of Coca-Cola common, the result is not otherwise, for he testified, in agreement with the broker's records, that the broker reported the sale as one of Coca-Cola common. Upon such report he accepted a check for the proceeds. He was charged expense of mailing in the International common stock certificate to the broker's correspondents; also a $19 fee for exchanging the Coca-Cola International. Since a notation showing such charges appears upon the broker's records, and a monthly report was made to petitioner, he should therefore be considered as having confirmed and adopted the action of the broker in selling the Coca-Cola common for his account. Under the evidence, it is immaterial that the Coca-Cola common was not put in petitioner's name. In addition. it is apparent that the petitioner considered when making his return that he had sold Coca-Cola common, for the return lists as sold not 100 shares, but 200 shares, and, though only the explanation "Coca-Cola" appears, petitioner himself upon the witness stand explained this as indicating 200 shares of Coca-Cola common. This could, of course, not indicate the sale of the International, since he had no 200 shares of that stock. Coca-Cola International. was not being sold at that time upon the New York Stock Exchange, through which the sale here involved was made. It is clearly apparent, we think, that in order to make the sale, the International stock in effect had to be turned in for Coca-Cola common, that this was done under the petitioner's order, and that, therefore, he must be considered as having taken part in partial liquidation of Coca-Cola International Corporation. Though we base our conclusion upon the facts in this particular case, those facts are not in general different from those disclosed in *Citizens & Southern National Bank* v. *Commissioner*, 136 Fed. (2d) 406, affirming 46 B. T. A. 517, wherein a transaction involving Coca-Cola International and Coca-Cola common stocks was held to be in the nature of distribution in partial liqui-

dation. The same general situation is found in *Gus. T. Dodd*, 46 B. T. A. 7; affd., 131 Fed. (2d) 382, and the same conclusion was there reached by us. See also, as to the same stock, *W. A. Prescott*, 31 B. T. A. 17, and *George C. Woodruff*, 46 B. T. A. 727; affd., 131 Fed. (2d) 429. We conclude and hold that the transaction here at hand involved a distribution in partial liquidation of International common stock.

However, the petitioners in both cases contend that, regardless as to whether the transaction with the International stock amounted to an exchange in partial liquidation, nevertheless section 147 of the Revenue Act of 1942, amending section 115 (c) of the Internal Revenue Code, causes section 117 (a) of the Revenue Act of 1934 and its schedule of taxable percentages of capital gain to be retroactive to 1934, and therefore to justify computation of gain in this matter. That is the only question in the Smaw case. The contention is, in substance, that section 147 of the Revenue Act of 1942 contains the following language:

\* \* \* In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. \* \* \*

and, in amending section 115 (c), omitted the provision therein that "Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income," which in the Act of 1934 the respondent relies upon as authority for taxation of 100 percent of the gain upon amounts distributed in partial liquidation; therefore, the petitioners argue, the omitted language does not apply to the taxable year 1935 here at hand, and therefore under section 117 (a) only 30 percent of capital gain is taxable.

We do not agree with this view. The Revenue Act of 1942 contains the specific provision in section 101 that:

Except as otherwise expressly provided, the amendments made by this title shall be applicable only with respect to taxable years beginning after December 31, 1941.

In our opinion the language of section 147 with reference to amounts distributed in partial liquidation "whether before January 1, 1939, or on or after such date," and the reference to the part of distribution "properly chargeable to capital account" not being distribution of earnings or profits, is not sufficient to overcome section 101. The same provision, except as to date, had been contained in section 115 (c) for many years and was never, so far as we are informed or can ascertain, applied so as to cause section 115 (c) to be applied retroactively, so far as giving retroactive effect to the provisions of section 117 (a) with its schedule of taxable percentages of capital gain. We

think the inclusion of the language relied upon by the petitioners, in section 147 of the Revenue Act of 1942, is intended simply to continue in that act the same provision carried in previous acts, without intent to make the section retroactive as to the provisions here of interest. Certainly there is in section 147 nothing by which it is "expressly provided" that its provisions shall be retroactive, and section 101 of the Revenue Act of 1942, as above seen, makes it necessary, in order that a particular provision be retroactive. that it be so "expressly provided." We conclude and hold that section 147 of the Revenue Act of 1942 is not retroactively effective so as to apply the provisions of section 117 (a) of the Revenue Acts of 1934 and 1936 to capital gain from distributions in partial liquidation. We therefore conclude that no error is shown in the inclusion of all capital gain in petitioners' income.

*Decision will be entered under Rule 50.*